v. United States v. Brooks Mr. Rao, you've reserved two minutes for rebuttal. Am I pronouncing it right, Rao? Yes, that's right, Rao. All right. So Mr. Rao, you may proceed. Your Honors, and may it please the Court, my name is Gautam Rao, and I represent Appellant Charisma Brooks in this matter. Your Honors, affirming the District Court's finding of consent in this matter would be tantamount to ruling that homeowners have an affirmative obligation to say that they do not consent to law enforcement searches in order to be protected by the Fourth Amendment. But, I mean, this is a situation where the co-defendant gave the guns to the agents, right? It's not a search. In other words, they didn't come in and then start looking through drawers. They asked for the guns. They went in and sort of stood around, but the guns were given to them. That's right, Your Honor. And they were given by the co-defendant, not your client. So are you challenging the consent of the co-defendant? Your Honor, there's no affirmative indication to consent from either Ms. Brooks or Mr. Macon, her boyfriend, who ultimately gave the defendants the guns. When Mr. Macon went up to look for the guns, the agents were already present inside the  So imagine they've been outside the house, and they just said through a screen door, we'd like the guns. And then Mr. Macon came down and gave them the guns. Your client wouldn't have any basis to challenge that seizure or that recovery, right? No, Your Honor. They would probably lack Fourth Amendment standing in that respect. But the agents' presence inside the house is actually critical to this case because Well, critical to Mr. Macon, maybe. But I'm not sure why your client, I mean, in other words, are you looking to suppress anything other than the guns? No, it's critical Not statements, not anything else that happened inside the house, right? No, but it's critical to Ms. Brooks' conviction as well, Your Honor, because Oh, I'm sure the evidence is critical to Ms. Brooks. I mean, stuff found in the trunk of somebody else's car might have been critical to Ms. Brooks' conviction. It doesn't mean that she has standing to suppress the evidence. But it's the agents' presence inside the house, Your Honor, that allowed them to testify to the location of the guns. Had they only received the guns outside the house, the issue of who actually had custody and control of these guns would have been much more, there would have been no basis for them to testify that they saw Mr. Macon retrieve the guns from his closet. But that sounds like a motion to suppress their testimony about where they got the guns, not suppressing the recovery of the guns. Well, Your Honor, in situations such as this, when defendants have gone into the house to allegedly voluntarily retrieve things, this court has always treated it as a Fourth Amendment search and analyzed it in that framework as the district court did here. And the same was true in the United States v. Deutsch case from the Second Circuit where the defendant said he'd go inside to retrieve his identification and the officers followed him in. This court also treated that under the Fourth Amendment search framework. So even though it was the defendant himself who was doing the physical searching, this court has never held that that places it outside the context of a Fourth Amendment search. No, I get that, but it just seems to me that you're asserting, your claim is really based on Mr. Macon's will being overborne, right? He was coerced or he was the subject of the coercive behavior. And Ms. Brooks as well, Your Honor. I mean, they were present in her house as well. I mean, they had joint control and custody of the house. And it's the government's burden to affirmatively approve some form of valid consent to search the home. I didn't mean to knock you off your game. So there are other things I think you want me to cover. Your Honor, and then, so first, there were essentially two distinct searches here. After they failed to find the guns when Ms. Brooks was looking for them, there's conflicting testimony about whether they exited the house or simply went back downstairs. And then it was in response to Ms. Brooks' request, not law enforcement's request, that Mr. Macon then went up the stairs to look for the firearms. And that's when they were ultimately found. And there's no evidence in the record that there were any additional affirmative acts of consent at that point beyond the fact that they were both aware that the agents were inside the house and their mere affirmative failure to object. Which is what both the government and the district court relied very heavily upon in arguing that the totality of the circumstances here provided consent. But isn't it more than, I mean, it's not simply a matter of failure to object. Part of what the district court was concluding was that there was affirmative, if implied, consent to come into the home based on their request about, you know, we show us where the guns are or whatever the language was. And she says, sure, turns, they follow her in. And it's not just that she, you know, that there's no, what is it about those circumstances that does not support the idea that she is comfortable with them coming into the home? Two points to that, Your Honor. First, there is conflicting evidence in the record about what question exactly the agent asked her. In some instances they testified that they asked, can you show us where the guns are? But in other instances, such as on JA 110, the agent testified, quote, I asked Ms. Brooks if she could show me the firearms, not where the firearms are. And that testimony was repeated again on JA 120, where the agent testified, quote, could you find the firearms? So I thought you were not challenging the district court's findings of fact or the district court's rejection of your client and a co-defendant's affidavits. Is that accurate? That's right, Your Honor. But even on the district court's findings of fact, as they are in the record, there's also a scope issue here. Even if Ms. Brooks' initial sure could be construed as consent to that initial walkthrough of her bedroom and her closet, that search was finished. You know, she did not find the guns. They walked back downstairs and it was an additional intrusion upon the privacy of the home when they re-followed Mr. Macon up the stairs. And I think it's unreasonable for the agents to have believed that that initial and somewhat cursory conversation they had with Ms. Brooks extended to their continued presence in the home. And not just that, but then going back into the bedroom, which is really one of the most private areas of the home without any additional indications from either of them that they had consent to do that. And then after that, the agents continued to interview them in the home. And the district court sort of relied on the friendliness of that conversation as coloring the consent of the whole interaction. But I just want to emphasize that it's really what the agents recently believed at the time of the search that they had a basis to consent for. No, but what happened after is relevant to assess what the state of mind was before and what the atmosphere or the environment was before, wouldn't you say? Your Honor, this Court has never held that you could retroactively consent to a search in that manner. And the agents, at the time they were conducting the search, would have had no reason to know, obviously, what happened in the future regarding the friendliness. And at that time, after they had gotten the guns, which is when the interview in the kitchen was happening, obviously- But I mean, like if after the guns were recovered, there was, you know, loud shouting and altercations and swearing, that would, I think, be relevant to at least assessing what the overall environment was at the time that the guns were handed over. Your Honor, after- What the District Court is basically finding is that this is consistent with what was described before, that this was very respectful, courteous, and almost even pleasant, that the nature of the conversations was quite benign. Well, Your Honor, after the guns were found, law enforcement would have had extra incentive to be benign and polite, because they're obviously trying to get the defendants to make inculpatory statements. So I think regarding what happened after the fact as somehow ratifying what happened during the time of the searches is inconsistent with the protections of the Fourth Amendment. I see my time is up, unless there are any further questions. Well, you have reserved two minutes for rebuttal. Thank you, Mr. Rafferty. Mr. Durham? Good morning, Your Honors. May it please the Court, Reid Durham on behalf of the Appellee of the United States of America. The District Court properly denied the appellant's motion to suppress, because the record, which was developed over the course of a two-day evidentiary hearing, supported the Court's finding that the defendants had consented to the entry of law enforcement into their residence, and that their consent was, in fact,  The parties both agree in their briefs that this Court should review Judge Meyer's factual determination for clear error. This is a standard which is highly deferential to the ruling of the District Court. In fact, it's a fact for good reason, because Judge Meyer had the opportunity to listen to the testimony, to view the witness's demeanor, tone of voice, and ask his own questions throughout the hearing. And as this Court has previously indicated, in United States v. Ethiopia, if I hope I'm pronouncing that correctly, if the District Court's account of the evidence is plausible in light of the record viewed in its entirety, this Court may not reverse it, even though convinced that had it been sitting as trier of fact, it would have weighed the evidence differently. Right. So, accepting then the facts that the District Court found, what about this question of whether or not the presence or the searches and everything else exceeded the scope of the consent given, which is a legal question as opposed to a factual finding? Yes, Your Honor. First, I'd say that's not an issue that was raised by the appellant's brief, either in their initial brief or in their reply. But secondly, I'd say that the officers and the agents did not exceed the scope. As has been discussed already to some extent, this was a continuing sort of course of conduct where the agents interacted with Ms. Brooks, they got her consent to go in and look for the guns. She was unable to find them, went to the kitchen looking for the guns, still couldn't find them, went back outside to ask Mr. Macon to come find the guns. And so, this sort of one continuous course of conduct that sort of all those facts play into the officers' reasonable belief that they had the implied consent of Ms. Brooks and Mr. Macon to be in the home. And just getting back to United States v. ECF-FIA, the court there, this court, went on to say where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous. And as Judge Meyer found, there was an implied consent from Ms. Brooks and from Mr. Macon and probably the most compelling fact there was the agent's inquiry to Ms. Brooks, will you show me where the guns are? And she replied, sure. In affirmative response, that she would show him the guns and turn towards the residents that went inside and they followed. At no point did she express any objection to their entering the home. She certainly had the opportunity to do so She came back outside and asked Mr. Macon to help find the guns, at which point he didn't express any objection to the agents being present. And again, as the agents had testified and as Judge Meyer found in his written opinion, this was a largely cordial interaction where the parties wanted to explain themselves and they were trying to be cooperative. In assessing the consent to enter, of course, the court's also looking at the voluntariness of that consent. And again, Judge Meyer did not err in finding consent was voluntary. There was no evidence whatsoever that there was any threatening by the opinion on behalf of the officers. The parties were not restrained in any way. The officers engaged in no show of force or authority. They were in plain clothes. In fact, Mr. Macon left the scene for a period of time. He was not prevented from doing so and came back in his own accord. And again, as Judge Meyer indicated in his written ruling, the parties were eager to cooperate and engage in small talk and explain themselves indoors on a hot summer day. As Judge Meyer cited to and the government did as well in its written brief, United States v. Deutsch provides a, I think, a good example of a similar circumstance of implied consent where the party again, a circumstance where there's not an explicit request and answer to come in, but the circumstances suggest that the officers had a reasonable belief that they had permission to be inside the home. And in weighing whether there's valid consent given, the ultimate question, and this is from United States v. Garcia at 56 F. 3rd, 14, the ultimate question is whether the officer had a reasonable basis for believing that there had been consent to the search. And in this case, the officers had that belief. And again, the district court properly found the government had met its burden to prove that the warrantless entry was reasonable due to the consent given by Ms. Brooks and Mr. Macon. The appellant has raised no argument to the contrary. Or rather, the argument raised falls short. What about the argument that later, as the case approached trial, the judge found that there was evidence that hadn't been disclosed and it actually pertained to the bedroom and the appellant suggesting that the judge's concern about the veracity of the officers should have called for re-examination of finding them credible. What about that argument? Well, Your Honor, first of all, it's not an argument that was raised in the initial brief. So the government didn't have an opportunity to address that one-sided version of events. The government does not dispute in any way that there were lapses in the discovery. We didn't dispute it at the time in front of Judge Meyer and he took action as a result of it, preventing the government from calling a particular witness. But the inquiry for this court is related to the motion to suppress that actually was filed and what Judge Meyer knew at that time. There was no renewed motion to suppress afterwards. And so whether the fact that there were lapses in the discovery could have affected Judge Meyer's determination is speculative. Obviously, had that issue been raised in the initial brief, the government would have responded as to some of the nuance and context to some of these items and their lack of  to the case. But that was not raised in the initial brief. And so I'll just conclude, Your Honor, that the district court's denial of the motion to suppress should not be disturbed. We ask this court to uphold the judgment of the district court. Thank you. Thank you, Mr. Chairman. Mr. Rapp, you have two minutes for rebuttal. Thank you, Your Honor. Just a couple points. Your Honors, although the district court's fact findings are entitled to deferential clear error standard of review, this court has held that when the main question is whether a particular set of facts violates the Fourth Amendment or not, it's actually subject to de novo review. And that's from the United States v. Bohannon case 824 F. 3rd 242. So when the facts are, as the record states, the question of whether those facts ultimately violate the Fourth Amendment is entitled to de novo review. So that ultimately, the conclusion does not need to be deferential to the district court. And second, I just want to emphasize that the evidence in this record emphasizes that even the agents understood that they were relying primarily on a lack of affirmative objection in order to obtain consent. On JA 120-121, the agent testified, quote, so my consent is that she's not saying no. End quote. And this court and many other courts of appeal have held that that mere lack of affirmative objection is simply not enough for officers to show consent. Are there any further questions, Your Honor? No. All right. Thank you, Mr. Rao and Mr. Durham. We will reserve decision. Have a good day, both of you.